Harold BROWN, et al., Plaintiffs,

v.

KELLY & PICERNE, INC., Defendant and Third-Party Plaintiff,

v.

NASHUA FEDERAL SAVINGS & LOAN ASSOCIATION, et al., Third-Party Defendants.

Civ. A. No. 80–571–C.

United States District Court, D. Massachusetts.

Aug. 6, 1981.

Brown, Rudnick, Freed & Gesmer, Marilyn D. Stempler, Boston, Mass., M. Frederick Pritzker, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for plaintiff.

David P. Raisback, Tillinghast, Collins & Graham, Providence, R. I., Alan Einhorn, Epstein & King, Boston, Mass., for defendant and third-party plaintiff.

Joyce A. Wilder, Nashua, N. H., for Nashua Fed. Savings.

John P. Cronin, Barron & Stadfeld, Bernard Dwork, Boston, Mass., for Home Owners Fed. Savings & Loan Assoc.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by Harold Brown and Ronald Brown, as general partners of New England Realty Associates (NERA), a Massachusetts limited partnership against Kelly & Picerne, Inc. (K & P), a corporation organized under the laws of Rhode Island which has a principal place of business in Cranston, Rhode Island. K & P does business in the Commonwealth of Massachusetts. The diversity jurisdiction of this Court is invoked by plaintiff pursuant to 28 U.S.C. § 1332. The amount in controversy is $50,000. The matter is presently before the Court on defendant's motion for a directed verdict made after the conclusion of plaintiff's evidence in a non-jury trial. The motion has been briefed by the parties who have filed suggested findings of fact and conclusions of law.

After trial I find and rule that NERA is a limited partnership formed pursuant to an amended arrangement under Chapter XII of the Bankruptcy Act. The arrangement was filed and confirmed in connection with a case before another judge of this Court captioned *In Re: Colonial Realty Investment Co., et al.,* C.A. No. 74–1557.

As part of that arrangement certain parcels of real property formerly owned by Colonial Realty Investment Co. were transferred by the Chapter XII trustee to plaintiff herein. One of the parcels was an apartment complex in Nashua, New Hampshire known as Regent Park Apartments.

In September of 1979 NERA and (K & P) executed a purchase and sale agreement under the terms of which K & P was to purchase Regent Park for an agreed price of $2,575,000. As part of the agreement, K & P was required to make a deposit of $50,000 which was to be retained by NERA as liquidated damages if K & P failed to fulfill its obligations under the agreement. A $50,000 check was delivered to plaintiff by K & P but was never cashed and ultimately a stop payment order was filed with reference thereto.

The agreement, as modified, required NERA to present K & P, at 2:00 p. m. on February 1, 1980, a deed conveying "good and clear record and marketable title to Regent Park." At various times in December 1979 and January 1980 representatives of K & P advised representatives of NERA that there were title problems pertaining to Regent Park. During those negotiations John Panagako representing K & P re-

quested an extension of the closing date from Ronald Brown a general partner of NERA, which extension Mr. Brown refused.

I find that although it was, and is, the position of NERA that a good and clear record title to Regent Park existed in NERA because of a decree entered by a judge of this Court in the Colonial Realty Investment Co. proceeding on September 16, 1977, which decree was recorded in the Hillsborough, New Hampshire Registry of Deeds in Book 2575, page 628, nevertheless, present counsel for plaintiff herein prepared, submitted to and obtained from that judge of this Court a supplemental order on January 31, 1980, the day prior to the day set for the closing of the transaction. That supplemental order was not a matter of record at any time on February 1, 1980 and in fact it did not become a matter of record until June 30, 1980.

I find that as of 2:00 p. m. February 1, 1980, the documents on record reflected that William F. Looney, Jr. was the trustee in Bankruptcy of New Colonial Realty Investment Co. but that the record at the New Hampshire Registry of Deeds failed to contain a certified copy of the resignation of Mr. Looney as trustee in Bankruptcy. He in fact had resigned before February 1. The record did not contain a certificate from the New Hampshire Secretary of State establishing the registration of NERA as a foreign partnership. There was not on record in the Registry of Deeds a deed conveying title in fee simple to Regent Park running from John Quincy, successor trustee in Bankruptcy, to NERA.

■ I rule that under both Massachusetts and New Hampshire law good and clear record and marketable title has the same meaning, i. e. a title which is free from reasonable doubt in law and in fact, not merely a title valid in fact, but one which can be readily sold to a reasonably prudent purchaser or mortgaged to a person of reasonable prudence. Such a title must be free from any reasonable objection of a reasonable purchaser. The title must be in such condition as to be free from any question which would cause a prudent man to pause and hesitate before investing his money. I further rule that under New Hampshire law, a title is not marketable if the examination of matters of record outside New Hampshire is necessary to make the title marketable as a matter of record. *Paradis v. Bancroft*, 97 N.H. 477, 91 A.2d 925 (1952).

■ I rule that a reasonable purchaser about to expend $2,575,000 would not consider the title proffered to K & P by NERA as being free from doubt on the record, and I further rule that plaintiff did not tender to defendant a good and clear record and marketable title on or before 2:00 p. m. on February 1, 1980. Accordingly, an order will enter granting defendant's motion for a directed verdict, dismissing the complaint and dismissing the third-party complaint which is contingent on plaintiff establishing liability on the part of K & P.